McBride v. State.*

[104 So. 454.   No. 24911.]

(Division B.   June 8, 1925.)

1. False Pretenses. *Intention to defraud must be alleged in indictment for obtaining money by bad check.*

Under the provisions of chapter 120, Laws of 1916 (Hemingway's Code, sections 897, 898), providing that "any person, acting for himself or another with intent to defraud, shall obtain money, credit, goods, wares, or anything of value by means of making or drawing, or uttering or delivering any check, draft, or order for the payment of money upon any bank or other depository," etc., the gist of the offense is the intent to defraud, and such intent must be alleged in the indictment.

2. False Pretenses. *Indictment and information. Failure of accused to pay amount of draft on order within ten days after receipt of notice of nonpayment does not have to be alleged in indictment for obtaining money, etc., by bad check; indictment for obtaining money, etc., by bad check need not allege failure of accused to pay amount of check within ten days from notification that it was not paid on presentation.*

The provision in said section, "and the failure of the person drawing the draft or order to pay or have paid the amount of the same within ten days after receipt by him of written notice of its nonpayment upon presentation, shall be *prima-facie* evidence of obtaining the amount of said check under false pretenses," is no part of the crime, and need not be alledged or negatived in the

indictment. It is a mere rule of evidence and not conclusive of guilt nor does it constitute a definition of the offense.

*Headnotes 1. False Pretenses, 25 C. J., Section 71; 2. False Pretenses, 25 C. J., Section 54.

APPEAL from circuit court of Jones county, second district.

HON. R. S. HALL, Judge.

Homer McBride was convicted of violation of the "bad check" statute, and he appeals. Reversed and remanded.

*B. F. Carter,* for appellant.

The demurrer should have been sustained. This indictment does not charge that appellant issued and delivered said check with intent to defraud anyone and does not charge that anyone was defrauded in the issuing or delivery of said checks.

The court erred in refusing to admit the testimony of witness J. V. Owen and the appellant. This testimony clearly does away with any criminal and fraudulent intentions in all the transactions and, we submit, was entirely competent and should have been admitted. The state failed entirely to show that the appellant was given any sort of notice ten days before the bringing of the prosecution. Some effort was made to show the mailing of a letter to appellant by First National Bank, but this failed entirely as was so held by the lower court.

The motion for a peremptory instruction should have been sustained.

*J. L. Byrd,* Assistant Attorney-General for the state.

Complaint is made of the refusal of three instructions requested by the appellant. The first one instructs the jury that if the defendant believed at the time he gave the check in question that he had sufficient funds in the

bank to pay the same that they should acquit. We submit that this instruction is not applicable in this case because there is not a line of testimony in the record which shows that the defendant believed at the time he gave the check in question that he had any money in any bank, and we submit that that instruction was properly rejected.

Appellant complains of the fact that it is not shown that he was given the ten days' notice required by the statute. We submit that the proof does show that he was given this notice, but should we be mistaken in that, we submit that the jury could say from circumstantial evidence that as a matter of fact he did know within ten days and was notified within ten days by reason of the fact that he was arrested and charged with the offense within ten days, and the proof seems to us to be clear that a letter was written and a copy sent to his usual post office address and one sent to the jail, and that a letter was received at the jail for the defendant from the First National Bank of Laurel, which, so far as the record shows, contained a notice and nothing else.

We submit that this record viewed as a whole affirmatively shows that the defendant is guilty beyond a reasonable doubt, that there is no reversible error in the record and that the cause should be affirmed.

ANDERSON, J., delivered the opinion of the court.

The appellant, Homer McBride, was indicted and convicted in the circuit court of Jones county of a violation of the "bad check" statute (chapter 120, Laws of 1916; Hemingway's Code, sections 897, 898), from which judgment he appeals to this court.

Appellant demurred to the indictment upon the ground that it charged no offense under the law. The indictment, leaving off the caption, the signature of the district attorney, and the filing indorsement, is in this language:

"The grand jurors of the state of Mississippi, elected, summoned, empaneled, sworn, and charged to inquire in and for the Second judicial district of Jones county, state of Mississippi, at the term aforesaid, of the court aforesaid, in the name and by the authority of the state of Mississippi, upon their oaths present that Homer McBride on the 17th day of November, 1924, in the county aforesaid did unlawfully and feloniously issue and deliver unto the First National Bank of Laurel, Laurel, Miss., a corporation, for value, his certain check of the words and figures as follows, 'The Bank of Commerce, Poplarville, Mississippi, 8569 Poplarville, Miss., July 12, 1924, No. ———. Pay to the order of cash $200, two hundred dollars No/xx. Homer McBride,' when he, the said Homer McBride, had insufficient funds on deposit with the said Bank of Commerce of Poplarville, Miss., with which to pay the same, and the same has been presented to said bank for payment and has not been paid, against the peace and dignity of the state of Mississippi."

The statute, under which the indictment was drawn (chapter 120, Laws of 1916; Hemingway's Code, sections 897, 898) reads as follows:

"That any person, acting for himself or another, who with intent to defraud shall obtain money, credit, goods, wares, or anything of value by means of making or drawing, or uttering or delivering any check, draft or order for the payment of money upon any bank or other depository, knowing at the time of making or drawing such check, draft or order, or of the uttering or delivering of same, that he has not sufficient funds in or credit with such bank or other depository for the payment of such check, drafts or order in full, upon its presentation, provided that all such checks, drafts or orders shall be presented by the payee or assignee thereof to such bank or depository for payment within thirty days from the date of said draft, check or order, shall be guilty of a misdemeanor, if the amount of such check, draft or order be under twenty-five dollars, and he shall be guilty

of a felony if the amount of such check, draft or order be twenty-five dollars or more, and upon conviction thereof shall be punished as in other cases for obtaining money or goods under false pretenses. The failure of the person drawing, uttering or delivering such check, draft or order to pay or have paid the amount of same within ten days after receipt by him of written notice of its nonpayment upon presentation, shall be *prima facie* evidence of obtaining the amount of said check, draft or order, or of the goods or other property obtained by the giving of said check, draft or order by the person giving or drawing or uttering same, under false pretenses, within the meaning of this act, and mailing, postpaid, to the post office address of the maker, drawer or utterer of such check, draft or order, shall be *prima facie* evidence of the receipt of such notice. . . .

''That the word 'credit' as used herein shall be construed to mean an arrangement or understanding with the bank or other depository for the payment of such check, draft or order.''

The appellant contends that the indictment charged no offense for two reasons: (1) In that it failed to charge that the check involved was issued with intent to defraud; and (2) in that the indictment did not charge that appellant failed to pay or have paid the amount of the check in question ''within ten days after receipt by him of written notice of its nonpayment.''

1. There is little to be said on the first proposition. The statute does not make it a crime to draw bad checks. The crime therein defined is the drawing, uttering, or delivering of bad checks, orders, or drafts with the intent to defraud. It is true that the indictment charged that the drawing of the check by appellant was done unlawfully and feloniously. But that is not sufficient. The purpose of the legislature was to prevent the drawing, uttering, or delivering of fraudulent checks and drafts. We are therefore of the opinion that the indictment was fatally defective in that it did not charge that the check

in question was drawn by appellant with the intent to defraud.

2.   The language of the statute out of which the second question arises is as follows:

"The failure of the person drawing, uttering or delivering such check, draft or order to pay or have paid the amount of same within ten days after receipt by him of written notice of its nonpayment upon presentation, shall be *prima facie* evidence of obtaining the amount of said check, . . . under false pretenses, within the meaning of this act."

That provision of the statute is no part of the definition of the crime defined and denounced by the statute.   It deals alone with a rule of evidence.   It provides that if the written notice therein referred to is given and the person who draws, utters or delivers the check, order, or draft fails to make the same good within ten days after the receipt of such written notice, that shall be "*prima facie* evidence" of guilt.   Therefore the failure to pay in obedience to the notice is not conclusive of guilt, but only *prima facie* evidence of guilt.   On the other hand, the fact that the person drawing, uttering, or delivering the check, order, or draft may have paid it within ten days after receipt of such written notice will not exonerate him under the statute.   He might be guilty notwithstanding such payment.   If the check, order or draft has been drawn, uttered or delivered with intent to defraud, and the drawer has received the fruits of his fraud, he could not, under the statute, acquit himself by returning such fruits, after being caught and receiving the written notice provided for in the statute.   If the written notice is not given, of course, the state cannot stand upon the *prima facie* case provided for by the statute, but must go further and show all the elements of the crime, including the intent to defraud.

*Reversed and remanded.*